May it please the Court. I'm Jeff Osterweise, counsel for Dennis MacDougall and the other plaintiff appellants in this matter. I'd like to reserve three minutes of my time for rebuttal. Appellants are purchasers of Honda Odyssey minivans sold with a torque converter defect that causes the minivans to jerk and judder. Appellants brought their claims on behalf of a proposed class action of other Honda Odyssey purchasers. This appeal in district court abused its discretion when it excluded the purchasers damages expert Stefan Bodecker. The second question is did the district court commit an error of law when it determined that the purchasers without Mr. Bodecker's opinions lacked evidence of their damages despite the purchasers identifying a document from Honda's internal records showing Honda's assessment of the cost to repair the torque converter defect. Although the parties devote a large portion of the written arguments to Mr. Bodecker's I want to start with a second question because it should not get lost that the the district court committed a clear error of law when it found that appellants lacked evidence of damages and as a result granted summary judgment in Honda's favor. The parties agree in essence that the cost to repair a product defect is an appropriate measure of damages for the loss benefit of the bargain. Plaintiffs submitted evidence showing Honda's internal estimates for the cost to repair the defect alleged in this case and that's at ER 496. This evidence satisfies the standard described in this court's recent case Wynn v. Nissan North America. In Wynn the plaintiff's legal theory just like here was that Nissan violated the law by selling vehicles with a defect that was not reflected in the sale price. The court found that the plaintiff demonstrated the nexus between his legal theory and his damages model the average cost of repair. There the court did not require the model to be based on the actual amount paid to repair the defect. The court correctly observed that the sale of the defective vehicle is the liability triggering event not the manifestation of the defect. Therefore it follows that the plaintiff need not have paid the repair cost to have damages. The district court here completely failed to address Wynn and failed to consider whether plaintiffs were damaged at the point of sale regardless of whether they ever sought repairs. Honda doesn't genuinely contest Wynn or what its internal documents show about the cost to repair the defect. Instead Honda argues that plaintiffs have no damages because Honda allegedly repaired plaintiff's vehicles. But what Honda is doing is making a mitigation argument that it hasn't proven. Whether the repairs were fully effective is an issue of fact over which there remains a genuine dispute. Second, even if the repairs were fully effective, Honda did not moot appellants claims by providing those repairs after and only because plaintiffs filed this lawsuit. Plaintiffs are entitled to complete relief for their claims including enhanced damages, fees, and costs under consumer protection statutes at issue. In sum, the court erred as a matter of law by failing to apply controlling authority and giving credit to the repair cost evidence that plaintiffs put into the record. Turning to the second issue of plaintiff's damages experts report, Mr. Bodeker opined that class members overpaid for defective Odysseys using a conjoined analysis. Whatever criticisms the district court had of Mr. Bodeker's work, it's notable that the overpayment he measured was squarely within the zone analysis to repair the defect. That fact suggested Mr. Bodeker's work was not fundamentally flawed. But more important, the district court clearly abused its discretion when it faced its decision to exclude Mr. Bodeker on a finding of fact that was incorrect and without support in the record. Specifically, the court incorrectly found that the majority of the data produced by Mr. Bodeker's conjoint analysis was irrational at the individual level. The district court relied on Honda's expert Dr. Wilcox for this conclusion. Appellant's briefs explain why the district court should not have judged Bodeker's survey based on the individual predictions generated by the sawtooth software that he used for the conjoint analysis. That's at pages 28 to 30 of our opening brief. Bodeker followed guidance in the professional literature when he relied on composite data, not the But even so, the district court misinterpreted Wilcox's report to vastly overstate his findings about the proportion of data that was arguably irrational. At ER 14, the district court states, Dr. Wilcox analyzed individual survey responses in Bodeker's study and found that a remarkable 55.4% of individual responses reflected economically irrational choices. In actuality, Wilcox only measured the data on a respondent level to determine that 55.4% of respondents violated rationality principles. This is a completely different, the district court reached a completely different finding from what, from what Wilcox opined. We need to look at how Wilcox determined whether a respondent violated rationality principles. And we do, when we do that, we see that the amount of data needed for for Wilcox to put them into a respondent into the irrational bucket is actually quite small. Wilcox doesn't at all opine on how much of the data was actually irrational. The way that Wilcox put a respondent into the irrational bucket is described in in his report at R175, paragraph 33, including footnote 40. He looked at draws of data. And a draw of data has a lot of different data points. And he compared one point to the other. So for example, if price one compared to price two, you know, was irrational, then then Wilcox put all of, put that whole draw into the irrational bucket. And if enough draws for a single respondent could be coded as irrational, then he coded the respondent themselves as irrational. But when you look at the data that's in a draw, there's something in the, on the order of 30 relevant pairs. So for Wilcox, if one pair was irrational, then the entire draw was irrational. And that's a far different factual matter than than what the court had to say about the quality of Boudicca's data. And to make a point on this, there's a logical inference that Boudicca's data was not irrational. Honda only points to three arguably irrational human-given responses to Boudicca's survey. And there's no reason why Boudicca, putting his largely, vastly rational actual survey responses into an industry standard software program for conjoint analysis, would turn that data into, you know, wildly irrational data. It just, it just doesn't make sense and it's not what happened. And the problem here is that the district court viewed Boudicca's data as irrational and then turned around and look at his method to find flaws. But without the incorrect factual finding about flawed data, there was no reason to second-guess Boudicca's choices, which ordinarily would go to the weight. And Boudicca has, and we explain in our papers, reasonable explanations for all the choices that he made. So how do you deal with the out-of-circuit authority in which this testimony was rejected? I assume Your Honor is referring to cases like GM ignition switch. Exactly. In the recent Emerson case. You know, the appellant's view is that, and there are cases from the northern district that go the other way, you know, like the, the Myford Touch case and more recently the Maldonado v. Apple case. But the flaw, the fundamental flaw with those, GM the court there is looking to the, the market price that would have been paid had a manufacturer done something completely different, you know, perhaps produce a completely different supply of vehicles and put those on the mark, on the market. But that's not what we're measuring here. We're measuring the value of vehicles that were actually sold. And that's what Boudicca's work does. He, he measures the, the change in the actual market. He surveys people who were in the market for Honda Odysseys and measures how their, how their, their, their preferences change and applies that directly to the, the supply that was that was purchased. So for example, if Honda decided that if it had to disclose this defect, it only wanted to sell, say it had 100,000 vehicles and it wanted to sell 50,000, it wanted to sell them for $30,000 minimum regardless of, of whether it could only sell half. Well, that wouldn't make the value of these vehicles $30,000 because the other half of those vehicles would be going to the junkyard at $0. So it's a perfectly rational choice, opinion by an economist that he should hold supply constant. I want to get to one other point about the district court's critique of, of Boudicca's work. And, and that's, and that's the, his choice of prices. And, and here the district court abused his discretion by, in essence, requiring Boudicca to be a, you know, some kind of exact prices available in the market. The district court ignores what, what Mr. Boudicca has to say about the role of prices play in his survey, which is that they need to be realistic to provide a, a choice that, that the survey participants will understand so that he can measure their change in preferences. They don't, they don't need to be precise prices that are available in the market. I mean, I don't believe there's any evidence that HANA has ever put a window sticker on a vehicle saying this vehicle has a transmission defect. So there, there isn't a market price for him to use. He used reasonable price levels in his survey, and there's nothing in the, in the record that suggests that his price levels were not relevant, or were not reasonable. And, and there's one other point that the district court didn't pick up on, and that is that the Boudicca's survey itself is grounded on the prices that, that the participants of the survey actually paid. So, you know, at paragraph 110 of his report, ER 269, 270, there's a reference to the prices that, a question for inserting the price that, from a prior question, and then at paragraph 142 of his report, ER 285, he makes reference to what that medium price was at, at 27,500. And, you know, that, that actually turns out to be very close to the price that the district court had for a 2016 Odyssey at ER 14 note 6. So I see that I'm near the end of my time here, so I will, I'll stop there. Thank you. We'll hear from American Honda. Good afternoon, your honors. My name is Ann Voights, and I represent American Honda Motor Company. This court should affirm the district court's order excluding Mr. Boudicca's conjoined study, as well within its broad discretion. Plaintiffs don't contend that the district court applied the wrong law, so to reverse, this court has to find either that this report reached a clear error in judgment, or rested its decision on clearly erroneous findings of fact, and the district court here did neither. The district court's decision can be affirmed because a conjoined study is categorically not appropriate in the automotive context. It measures a consumer's willingness to pay, but it doesn't actually measure the market price. And second, even if you assume that a conjoined study could accurately assess damages in the automotive context, this study couldn't, because it fundamentally departed from the accepted principles for conducting such a study. Counsel, is it your position that no court should ever admit cojoint analysis in these product cases? I think our position is that it's particularly inappropriate in the automotive context, given the difficulty in assessing price. Well, that's not really an answer to my question. My question is, do you think cojoint analysis, as a matter of law, should never be allowed in a product liability case? A conjoined analysis that does not look at supply-side considerations should not be admitted. Yes, we would agree with that position. That is our position. And that is the fundamental flaw in Mr. Boudicca's study, was that it did not look to the supply-side considerations, and it didn't take into account price on either the supply side or on the demand side. I know, but that seems to me like pretty good fodder for cross-examination, which is why I'm asking the question. If, as a matter of law, you can't ever have cojoint analysis, that's a different question than, well, is the methodology one that's accepted? It is, isn't it? Some courts have accepted it, others have not. What the court is entitled to do, under Rule 702, is to look at whether the expert has reliably applied the principles and methods to the facts of the case, whether the testimony is based on sufficient facts or data, and whether it's a product of reliable principles and methods. I know, but your position is that your expert disagrees with his expert, and the judge bought your argument that your expert was right. That seems to me like a problem in terms of the admissibility of expert testimony. Might be great cross-examination, but is it, as a matter of law, a basis to exclude the expert's testimony on cojoint analysis? Yes, Your Honor, it is, because the problem here is that, as we said, the testimony of Mr. Boudicca and his expert report fundamentally failed. It wasn't based on actual facts or data, it was based on speculation. Mr. Boudicca himself conceded that he was not an expert in automotive pricing. He conceded that the prices were ones that he came up with in his sort of based on nothing more than looking at a 2019 data sheet that didn't even price the various attributes that he then asked consumers to carry out. And courts have held that you cannot simply look at the prices, you know, you can't simply make things up. Every case has held that you have to look at actual market price. There is no case that upholds the position that plaintiffs have taken, which is that actual price is irrelevant, that it doesn't matter, because it fundamentally does. And as other circuit courts have held, expert evidence that's based on fictitious set of facts is just as unreliable as expert evidence that's based on no research at all, because they're based on speculation. And the district court here was well within its discretion in deciding that Mr. Boudicca's report was based on speculation, because that's what it was. And that certainly wasn't the only flaw in his report. As Dr. Wilcox pointed out, Mr. Boudicca also failed to adequately follow the normal procedures, the principles and methods that an expert would apply if they were trying to actually carry out a successful conjoined study. He didn't pre-test it, and it didn't mirror real-world preferences, and that doesn't real-world realities. And that isn't just a function of price, although that's obviously one of the most significant issues, but it also was reflected in what he chose as the attributes, including an attribute that didn't actually exist in the real world, and which he chose to put in the survey, because the ones he chose were not the ones that really mattered to the consumers. Those are not, we think, simply matters that can be subject to cross-examination, although they certainly are, but they are ones that go fundamentally to a district court's obligation as a gatekeeper under Daubert and under Rule 702 not to admit evidence that is not reliable. And this evidence, the district court was well within its discretion to conclude, was not. If I could address the issue of the cost of repairs, because I think it would, it might be helpful to sort of situate that argument. First, we think that that comes far too little and too late, that a single document is a very thin reed for plaintiffs to rely on. First, with respect to Nguyen, all that Nguyen held was that it was sufficient to use the cost of repairs as a proxy for benefit of the bargain, that that was sufficient to create a nexus between the theory of liability and then the way that they proposed to establish damages. But Nguyen expressly did not opine on the sufficiency or the adequacy of the evidence, and that's what the district court here looked to. And it said a single document that has nothing to do with the cost to plaintiffs isn't enough. That is not a proxy for benefit of the bargain damages. And that was an appropriate decision for the district court to make. That was an argument that was raised only at the very end in Plaintiff's final brief, and the district court correctly decided that that was not sufficient to stave off summary judgment. Plaintiffs had put all of their eggs in Mr. Boudicca's basket, and when that failed, they did not have sufficient or adequate evidence on damages. And the district court's decision on that point should also be affirmed. If the court has, I'm certainly happy to answer the court's questions on that point. If not, I'd like to return and make one or two more points on Mr. Boudicca's study, if I could. Please proceed. Thank you, Your Honor. So one point that plaintiffs have made is they say, well, it really doesn't matter whether you take into account the real world practicalities. It doesn't matter if you look at real price. But the whole point is that this is supposed to be a measure of what would have happened, but for the nondisclosure of a defect. So the more variables that you change, the more speculation that you introduce, whether it is about price or the attributes or what the consumers are able to choose between, the more irrationality you introduce into it. And I think Dr. Wilcox made it very clear that the results that were produced here, at every level that you look at them, if you look at the survey responses, if you look at the way sawtooth generated responses, all of those are fundamentally problematic. And the district court's conclusion that the majority of these were irrational, I think is certainly not clear error. With respect to the plaintiff's position that this really isn't a problem because Mr. Boudicca simply weeded it all out. He averaged it. The averaging, for the reasons we set forth in our brief, did nothing more than mask the problems. It didn't eliminate them or cure them by any means. And if this court were to look indeed, even at the report that Mr. Boudicca provided, even his supplemental one, he said there that looking at the pricing data, he based it on his subjective judgment. He said he wasn't an expert in the valuation. And he just said he raised or lowered them to derive the best possible hypothetical price. We created a price range between the lowest and the highest. And I think that creativity just isn't reliable. It doesn't produce reliable results for all the reasons that Dr. Wilcox set forth and the district court adopted. And it was certainly not an abuse of discretion on the district court's part to enforce its role as a gatekeeper under Daubert. And to say that this was not appropriate or adequate evidence of damages to strike Mr. Boudicca's testimony, and then to grant summary judgment to American Honda. I'm certainly happy to answer any questions that the court has. Otherwise, we would just ask the court to affirm because the district court is well within its discretion under Daubert, when it applies the correct legal framework to the facts in a manner that's not illogical, implausible or contrary to the record. Nothing that plaintiffs have pointed to in their briefs or an argument today comes close to satisfying that test. And this court should affirm. I'm interested in knowing why the documents were sealed that are sealed. It doesn't look to me like there's anything in there that shouldn't be in the public forum. Certainly happy to answer specific questions on particular documents, but in general, all of the documents when the Honda asked to seal them were based on the fact that they dealt with internal processes and business secrets and trade information that would be harmful to Honda to have out in the public. Okay, then explain why. Would you please explain why Exhibit 34 somehow impacts your business operation? That's the extract from the testimony of one of your in-house experts, I believe. There's like, thank you. I think, again, he was discussing sort of Honda's internal processes. They were dealt with how Honda approaches these issues. And this was a matter that was put, we submitted a declaration from American Honda explaining why we thought that that was. We didn't designate the entire transcripts. It was only portions of it that were sealed. And we did so because they contained information about pricing, market demographics, how Honda approaches affairs, all of which are matters that normally would not be in the public record and shouldn't be because they are trade secrets. That was a decision that the district court agreed with. And that is why we asked this court to seal it as well. Thank you. Thank you, counsel. We'll hear rebuttal. Thank you. Uh, on the point of the repair evidence, uh, counsel for American Honda calls it too little too late. But this is an internal analysis from Honda's high level engineering that shows what they determined the cost to repair this defect to be. The district court didn't consider this evidence and and dismiss it under a correct standard. Uh, the district court completely failed to apply the wind case and consider the possibility that and actually the legal truth that, uh, the plaintiffs here were damaged at the point of sale, regardless of whether they paid any out of pocket costs to repair the defect. Uh, a couple other points. Um, you know, American Honda talks about, you know, the goal here being to measure what actually would have happened, uh, in an alternate world where, uh, where Honda disclosed this defect. That's that's not the case. The point here is to determine the value of the vehicles, the actual vehicles that were sold in the real world to determine the value of those of those vehicles, um, to to a market that's that's willing to buy them on. I would encourage the court to look at the reasoning of the recent Maldonado case from the northern district of California on this point for how, uh, you know, factoring in all of these hypothetical changes that a manufacturer might make just creates a moving target that's into the antithetical to measuring damages. Um, you know, as far as as as Boudicca's work, the district court plainly erred in in even his basic understanding of what Dr Wilcox Wilcox was saying about Boudicca's, um, data. The data was nowhere near as flawed as he suggested. Uh, and and that, um, that factual finding in error by the district court tainted the rest of its consideration of Boudicca's method, which was reasonable and and and any critiques of them are for the jury to weigh. Thank you. Thank you, Counsel. Thank you. Both three arguments this afternoon. The case just started to be submitted for decision.
judges: THOMAS, McKEOWN, Molloy